# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
May 22, 2001 Session

## STATE OF TENNESSEE v. DARLENE RENEE BLACKHURST

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S42,421     R. Jerry Beck, Judge**

---

**No. E2000-01864-CCA-R3-CD**
**August 30, 2001**

---

The defendant, Darlene Renee Blackhurst, pled guilty to second offense driving under the influence of an intoxicant ("DUI"), leaving the scene of an accident involving injury, and three counts of reckless aggravated assault. Following a sentencing hearing, the trial court imposed an effective sentence of three years, eleven months, and twenty-nine days, to be served on intensive probation following a mandatory period of 45 days in confinement for the DUI second offense. In this appeal, the State contends that the trial court erred when it placed Defendant on full probation because the trial court failed to properly consider the victim's testimony during the sentencing hearing. Our de novo review reveals that the trial court did err in its application of the law concerning victims' statements and in granting probation for the full time remaining in Defendant's sentence following confinement. However, our conclusion regarding the impropriety of probation is based on sentencing considerations other than the testimony of the victim. Accordingly, we reverse the trial court's judgment regarding the manner of service of Defendant's sentence and remand this matter to the trial court to determine whether Defendant should be incarcerated for the full term of her sentence or, in the alternative, serve the balance of her sentence in split confinement.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed.**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ROBERT W. WEDEMEYER, J., joined.

Paul G. Summers, Attorney General and Reporter; Peter M. Coughlan, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and James Goodwin, Assistant District Attorney General, for the appellant, State of Tennessee.

Richard A. Spivey, Kingsport, Tennessee, for the appellee, Darlene Renee Blackhurst.

## OPINION

## FACTUAL BACKGROUND

At 11:50 p.m. on December 5, 1998, Defendant was traveling in her car down the exit ramp of Interstate 181 toward Lynn Garden Drive when she struck a Honda Passport that was stopped at the traffic light. The Honda contained the driver, Brenda Gardner; her ten-year-old son, Blake Ericson; and her son's twelve-year-old friend, Brooke Shaffer. All three victims suffered "severe bodily injury" as a result of the impact. After colliding with the victims' car, Defendant immediately left the scene. She was subsequently discovered by Kingsport Police Department Officer Samples after she struck a guard rail and mailbox on Hawkins Avenue in Sullivan County later that evening. When Officer Samples arrived at the scene of the second collision, Defendant had a strong odor of alcohol about her person, was unable to stand without support, and did not cooperate with Samples when he attempted to conduct field sobriety tests. Later, Defendant's blood alcohol was determined to be 0.23.

Defendant pled guilty to second offense driving under the influence of an intoxicant ("DUI"), Tenn. Code Ann. § 55-10-401, a Class A misdemeanor; leaving the scene of an accident involving injury, Tenn. Code Ann. § 55-10-103, a Class A misdemeanor; and three counts of reckless aggravated assault, Tenn. Code Ann. § 39-13-102, a Class D felony. Pursuant to the negotiated plea agreement, the trial court imposed concurrent sentences of three years for each of her felony convictions, and concurrent terms of eleven months and twenty-nine days for her two misdemeanor convictions. The felony sentences were then ordered to be served consecutively to the misdemeanor sentences for an effective sentence of three years, eleven months, and twenty-nine days, with a minimum of forty-five days mandatory confinement on the DUI, second offense.

On April 10, 2000, a sentencing hearing was held to determine the manner of service for Defendant's sentence, less the forty-five days for mandatory confinement which Defendant had already served at the time of sentencing. The trial court heard oral testimony from Brenda Gardner, the victim who was driving the Honda Passport struck by Defendant. Regarding the collision, Gardner testified that she was stopped at the traffic light when she noticed the headlights of a vehicle rapidly approaching from behind her. Gardner's ten-year-old son and his twelve-year-old friend were riding in the back seat at the time. When the vehicle reached the victims, it swerved and hit them, knocking the Honda fifteen to twenty feet into the intersection and oncoming traffic. The children started screaming. Gardner called 911 and got out to check on the driver, later identified as Defendant. As she approached, Defendant put her vehicle in reverse, backed out from under Gardner's rear bumper, looked at the screaming children, and then drove off. A man who had stopped to help volunteered to follow Defendant and report her whereabouts with his cell phone until the police could locate and arrest her.

Gardner further testified that her injuries included a concussion, bruises, and torn ligaments and tendons. In addition, she was attending therapy sessions. Psychological therapy had initially been prescribed for her following her father's death in an accident involving a drunk driver eighteen

months prior to her testimony. She had completed those sessions before Defendant struck her car, but had been forced to resume therapy treatment after the accident. Injuries to her son included bruises and recurring nightmares; her son's friend suffered cuts and bruises on her face. Gardner claimed she was amazed when Defendant drove away without checking to see if anyone had been hurt or killed in the collision.

Gardner also testified that Defendant telephoned her the Monday following the accident to apologize. Defendant told Gardner that "this is not like her" and "she doesn't do this kind of thing." However, Gardner subsequently learned from the police that this incident gave rise to Defendant's third DUI conviction and her second conviction for leaving the scene of an accident. Gardner felt that incarcerating Defendant for the next three years, eleven months, and twenty-nine days would certainly enhance public safety.

The presentence report revealed that at the time of the sentencing hearing, Defendant was a forty-year-old woman who had graduated from high school and also earned an associate of arts degree in Nuclear Medicine Technology from West Virginia State College. Defendant was employed and reported herself to be in excellent health, with no problems or limitations except for occasional bouts of depression. Defendant's criminal record contains a prior conviction for leaving the scene of an accident in 1986 and two prior convictions for DUI: one occurred in Moore County, North Carolina, in September 1990, and the other occurred in Sullivan County, Tennessee, in February 1993.

At the conclusion of the sentencing hearing, the trial court ordered Defendant to serve the remainder of her sentence on intensive probation, in house-arrest circumstances, subject to the following conditions: (1) payment of full restitution to the victims, (2) counseling, if necessary, after evaluation for substance and alcohol abuse, (3) adherence to a curfew, (4) zero use of alcohol or any illegal substance, (5) performance of 200 hours of community service at a rate of ten hours per month, and (6) written letters of apology to the victims. The record reveals that the trial court based its decision on the following facts: Defendant was employed, reasonably healthy, a home owner, and had expressed some remorse for the accident. The trial court stated that, in determining whether probation was proper, it was required by law to consider treatment in lieu of incarceration when appropriate and that the nature/circumstance of an offense is not sufficient, by itself, to deny probation unless the offense was "especially horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree," citing State v. Bingham, 910 S.W.2d 448 (Tenn. Crim. App. 1995). The trial court also issued a thirty-three-page order articulating the specific findings of fact and law which served as a basis for its sentencing determination, including an extensive analysis of the problems and implications of Article I, section 35 of the Tennessee Constitution. (This section, ratified in November 1998, provides the victims of crimes eight "basic rights" as enumerated in the amendment. See also Tenn. Code Ann. § 40-38-301.)

## ANALYSIS

The State contends that the trial court erred in granting probation to Defendant because the trial court misapplied the applicable law governing the testimony of a victim at Defendant's sentencing hearing. Specifically, the State asserts that the trial court erred when it determined that the victim's oral testimony was governed by the Victim Impact Statement Act, see Tenn. Code Ann. §§ 40-38-201 to -208, and when it concluded that the Act limits a victim's oral testimony to a mere reiteration of those statements previously given in the written victim impact statement where one is included in the presentence report. The State contends that the trial court also erred when it ruled that victim impact evidence is only relevant in determining applicability of statutory enhancement and mitigating factors. The State argues that, in light of the trial court's abuse of discretion and failure to consider relevant evidence, Defendant's probation must be reversed and the case remanded for proper consideration of the victim's testimony as contemplated by Tennessee Code Annotated section 40-35-209.

After a de novo review of the record and applicable law, we agree with the State that the trial court erred in applying the law concerning a victim's testimony for purposes of sentencing. Although we also conclude that granting intensive probation for the full period of time following Defendant's forty-five days of mandatory confinement was improper, we base this conclusion on considerations unrelated to the victim's statement. For the reasons which follow, we reverse the trial court's judgment granting Defendant full probation and remand this matter to the trial court for further findings, namely, to determine whether Defendant should serve her sentence in split confinement or whether incarceration for the full sentence term would be more appropriate under the circumstances.

### I. The Victim's Testimony

In its argument that the trial court misapplied the law concerning a victim's testimony for purposes of sentencing, the State relies, in part, upon the recent case of State v. Robert D. Ring, No. E1999-02088-CCA-R3-CD, 2001 WL 201819, Sullivan County (Tenn. Crim. App., Knoxville, March 1, 2001) no perm. to app. filed. After reviewing the facts of both cases, we agree that the analysis of Ring is applicable in the case sub judice.

The question in Ring was whether the trial court's failure to consider the victim's impact testimony at the sentencing hearing and its subsequent grant of probation were erroneous. We found that the trial court erred in characterizing the victim's testimony as a "victim impact statement" which should be analyzed under the Victim Impact Statement Act, Tennessee Code Annotated sections 40-38-201 to -208. Id. at *4. We also concluded that the trial court erred when it limited its consideration of the victim's testimony to statutory enhancing and mitigating factors only, finding that "whenever victim impact information contains relevant and reliable evidence relating to enhancing or mitigating factors and/or any other sentencing consideration, the trial court should consider it and determine what weight, if any, should be given to that evidence." Id. Further, we found the victim's testimony showing the financial, emotional, psychological, and/or physical effects

-4-

of the victim's death on the victim's immediate family could be considered evidence regarding the nature and circumstances of the crime when determining appropriate punishment. Id. at *5; see Tenn. Code Ann. § 40-35-210(b)(4). Notwithstanding the trial court's error regarding the law concerning victim impact testimony, we affirmed the trial court's judgment on other grounds.

As observed in Ring, Tennessee law provides three legal avenues by which a victim may participate in the sentencing process: the "Victims' Bill of Rights," codified in Tennessee Code Annotated sections 40-38-101 to -108; the "Victim Impact Statement Act," codified in Tennessee Code Annotated sections 40-38-201 to -208; and Tennessee Code Annotated section 40-35-209(b) (which affords the victim of the offense an opportunity to be heard and present evidence relevant to a defendant's sentencing). Our discussion of the issues concerning victim testimony will be limited to those sections directly related to the specific error in issue.

We first address the State's contention that the trial court erred when it determined that the Victim Impact Statement Act ("Act") governed the victim's testimony at the sentencing hearing. Our review of the record suggests that the trial court relied heavily on the Act in its conclusions of law regarding the proper consideration and weight due a victim's testimony for purposes of sentencing. However, the language of the Act indicates that it applies to written victim impact statements prepared by the Department of Correction as part of the presentence report on a defendant, and not live testimony. See Tenn. Code Ann. § 40-38-205. In fact, none of the statute sections contained in the Act make any reference to oral testimony, express or implied. Rather, as we observed in Ring, the live testimony of this particular victim should have been considered under the provisions in Tennessee Code Annotated sections 40-35-209(b) and 40-38-103(a)(2). Because the victim's testimony was not governed by the Act, to the extent the trial court made decisions based on this determination, they are erroneous.

We also agree with the State's contention that the trial court erred by concluding that the Act limits a victim's oral testimony to a mere reiteration of those statements previously given in the written victim impact statement, if one is included in the presentence report, and that any information which exceeds the facts therein may not be considered by the trial court for purposes of sentencing. According to the record, the trial court apparently relied on either the ten-day notice provision in Tennessee Code Annotated section 40-38-206 or on section 40-35-209(b). However, reliance on the former is misplaced because section 40-38-206 is contained in the Act which, as previously observed, does not apply to a victim's oral testimony. See Tenn. Code Ann. § 40-38-206. Section 40-35-209(b) also fails to support the trial court's determination. This section provides that reliable hearsay may be admitted at the sentencing hearing so long as the opposing party is accorded a fair opportunity to rebut such evidence. See Tenn. Code Ann. § 40-35-209(b). A written copy of the substance of Gardner's testimony was submitted with the State's "Motion to Allow Victim Testimony at Sentencing Hearing," and filed ten days prior to that hearing. Since Defendant had access to the substance of Gardner's testimony ten days prior to sentencing, and Gardner was also available for cross-examination at that time, Defendant had sufficient notice and a fair opportunity to rebut any evidence that she found objectionable.

The State also asserts that the trial court erred when it determined that, according to Tennessee Code Annotated section 40-38-207, the victim's statement may be considered only in determining the applicability of the enhancement and mitigating factors in Tennessee Code Annotated sections 40-35-113 and -114. Tennessee Code Annotated section 40-38-207 states that "[a]ny victim impact statement submitted to the court under section 40-38-205 shall be considered as evidence in determining whether the factors in §§ 40-35-113 and 40-35-114 apply." The trial court found that this section "specifically and narrowly limits the purposes for which a trial court may consider victim impact evidence" to determining whether statutory enhancement and mitigating factors apply. We disagree. As noted above, the Act does not apply to a victim's oral testimony and section 40-38-207 is contained therein. Moreover, the plain language of the statute merely directs the trial court to consider the evidence presented in the victim's statement when determining issues where statutory enhancement and/or mitigating factors apply in sentencing procedures. The statute contains no limiting or restrictive language that would support the trial court's interpretation as stated <u>supra</u>. As we determined in <u>Ring</u>, victim impact information which contains relevant and reliable evidence relating to enhancement or mitigating factors, the nature and circumstances surrounding the offense, sentencing principles or arguments as to sentencing alternatives, and/or any other sentencing consideration, should be considered by the trial court and then given appropriate weight, if any. <u>See</u> <u>Ring</u>, 2001 WL 201819 at *4-6.

In summation, we find that the trial court erred in at least three respects: (1) characterizing the victim's oral testimony as a statement governed by the Victim Impact Statement Act; (2) concluding that a victim's oral testimony must be limited to information contained in the written victim impact statement; and (3) concluding that Tenn. Code Ann. § 40-38-207 directed a trial court to consider the victim's statement only when determining applicability of statutory enhancement and mitigating factors. Under Tennessee Code Annotated section 40-35-209(b) and section 40-38-103(a)(2), the victim, Gardner, had a right to testify and provide impact information for consideration at the sentencing hearing. Afterward, the trial court should have determined whether the victim's impact testimony contained any relevant and reliable evidence relating to enhancing or mitigating factors *and/or any other sentencing consideration*, and then decided what weight, if any, should be given to that evidence in fashioning an appropriate sentence. <u>See</u> <u>Ring</u>, 2001 WL 201819 at *4.

Although the trial court erred in applying the law concerning a victim's testimony for purposes of sentencing, we note that the State failed to point to any relevant or reliable evidence in the statement that pertains to any enhancing or mitigating factors and/or tends to prove any other sentencing consideration. After carefully reviewing this victim's testimony, however, we conclude that it offers a glimpse into the emotional, psychological, or physical effects of the accident on the victim's life and that of her son. The trial court should have considered this evidence of the nature and circumstances of this crime, <u>see id.</u>, in addition to any other evidence presented in the victim's testimony which it deemed relevant when determining the appropriate punishment.

We further note that our conclusions regarding the above issues are, as a practical matter, unchallenged by Defendant. In her brief, Defendant contends that the limitations on victim impact

statements apply to Gardner's testimony, and, even if the trial court were to consider the testimony, the victim impact evidence is not relevant to any legitimate sentencing issue. Defendant does not specify which limitations she is referring to, however. Nor does she explain why the impact on Gardner is not relevant to any sentencing consideration.

### B. Sentencing

The State contends that the trial court erred in granting Defendant intensive probation for the time that remained in her sentence following mandatory confinement. In response, Defendant contends that the evidence supports the trial court's conclusion that the State failed to rebut the statutory presumption favoring probation in her case. After a careful review of the record and applicable law, we agree with the State that granting intensive probation for the full period of time following Defendant's forty-five days of mandatory confinement was improper. However, our conclusion is based on sentencing considerations other than the victim's statement and testimony.

When either a defendant or the State challenges the length, range, or manner of service of a sentence, this Court conducts a <u>de novo</u> review of the record with a presumption that the determinations made by the sentencing court are correct. <u>See</u> Tenn. Code Ann. §§ 40-35-401(d), 40-35-402(d) (1997). If our review "reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result." <u>State v. Pike</u>, 978 S.W.2d 904, 926-27 (Tenn. 1998); <u>State v. Fletcher</u>, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). On the other hand, if the trial court failed to comply with the statutory guidelines, our review is <u>de novo</u> without a presumption of correctness. <u>State v. Poole</u>, 945 S.W.2d 93, 96 (Tenn. 1997). Having concluded that the trial court failed to properly consider the victim's impact testimony in fashioning an appropriate sentencing alternative, our review of Defendant's sentencing determination in this case is <u>de novo</u> without a presumption of correctness.

The appellant, in this case, the State, has the burden of establishing that the sentence is improper. <u>See</u> Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. In determining whether the appellant has carried this burden, this Court must consider: (a) the evidence adduced at trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel; (e) the nature and characteristics of the offense; and (f) the appellant's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103(5), -210(b) (1997).

Because Defendant is a standard Range I offender convicted of two misdemeanors and three Class D felonies, she is entitled to the statutory presumption that she is a favorable candidate for alternative sentencing. <u>See</u> Tenn. Code Ann. § 40-35-106(6) (1997). However, "the determination of whether the [Defendant] is entitled to an alternative sentence and whether the [Defendant] is entitled to full probation are different inquiries." <u>State v. Boggs</u>, 932 S.W.2d 467, 477 (Tenn. Crim.

App. 1996). Where a defendant is entitled to the statutory presumption favoring alternative sentencing, the State has the burden of overcoming the presumption with evidence to the contrary. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995), overruled on other grounds, State v. Hooper, 29 S.W.3d 1 (Tenn. 2000); see Tenn. Code Ann. § 40-35-102(6) (1997). "Conversely, the defendant has the burden of establishing suitability for total probation, even if the [defendant] is entitled to the statutory presumption of alternative sentencing." Bingham, 910 S.W.2d at 455; see Tenn. Code Ann. § 40-35-303(b) (1997). Thus, Defendant's argument that "the State failed to rebut the [statutory] presumption in favor of granting probation" has no merit, for, no such "presumption" favoring probation exists.

To meet the burden of establishing suitability for full probation, the defendant must demonstrate that probation will "subserve the ends of justice and the best interest of both the public and the defendant." Bingham, 910 S.W.2d at 456 (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)). The following criteria, while not controlling the discretion of the sentencing court, shall be accorded weight when deciding the defendant's suitability for probation: (1) the nature and [circumstances] of the criminal conduct involved, Tenn. Code Ann. § 40-35-210(b)(4); (2) the defendant's potential or lack of potential for rehabilitation, including the risk that during the period of probation the defendant will commit another crime, Tenn. Code Ann. § 40-35-103(5); (3) whether a sentence of full probation would unduly depreciate the seriousness of the offense, Tenn. Code Ann. § 40-35-103(1)(B); and (4) whether a sentence other than full probation would provide an effective deterrent to others likely to commit similar crimes, Tenn. Code Ann. § 40-35-103(1)(B). Id. Denial of full probation may be based solely upon the circumstances of the offense when they are of such a nature as to outweigh all other factors favoring probation. See State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In determining whether to grant or deny full probation, additional considerations include the defendant's criminal record; social history and present condition of the defendant, including his or her mental and physical conditions where appropriate; defendant's amenability to correction and general attitude, including behavior since arrest, home environment, current drug usage, emotional stability, past employment, general reputation, marital stability, family responsibility, and the best interests of both the defendant and the public. See State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993); see also State v. Boyd, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995) (citing State v. Gennoe, 851 S.W.2d 833, 837 (Tenn. Crim. App. 1992)).

A defendant is eligible for full probation where the sentence received by the defendant is eight years or less, subject to some statutory exclusions not applicable here. See Tenn. Code Ann. § 40-35-303(a). Although full probation must be automatically considered by the trial court as a sentencing alternative whenever the defendant is eligible, "the defendant is not automatically entitled to probation as a matter of law." Tenn. Code Ann. § 40-35-303(b), Sentencing Commission Comments; State v. Hartley, 818 S.W.2d 370, 373 (Tenn. Crim. App. 1991). On appeal, a defendant seeking full probation usually bears the burden of showing that the sentence imposed is improper and that probation will be in the best interest of the defendant and the public. State v. Baker, 966

S.W.2d 429, 434 (Tenn. Crim. App. 1997). Here, the State, as the appellant, bears the burden of showing the opposite.

Upon <u>de novo</u> review, we find the facts and circumstances in this case indicate that full probation is inappropriate for Defendant. Generally, this court will not set aside findings of fact made by the trial court after an evidentiary hearing unless the evidence contained in the record preponderates against the trial court's findings. <u>State v. Dick</u>, 872 S.W.2d 938, 943 (Tenn. Crim. App. 1993); <u>State v. Young</u>, 866 S.W.2d 194, 197 (Tenn. Crim. App. 1992). This deference applies to a trial court's findings of fact in the context of sentencing hearings. <u>State v. Raines</u>, 882 S.W.2d 376, 383 (Tenn. Crim. App. 1994).

However, in this case we do not agree with the trial court's conclusion that because Defendant is employed, has accepted responsibility for the accident, and appears remorseful, she has sufficiently established suitability for full probation in light of the other factors in the record. For instance, the record reveals that Defendant has a history of problems with alcohol abuse as demonstrated by her prior convictions for driving under the influence of an intoxicant. Yet we find no indication of an attempt by Defendant to initiate treatment through Alcoholics Anonymous or any other organization designed to provide counseling or assistance with problems of this nature. Defendant also exhibited a lack of candor when she declined to report her prior DUI conviction in North Carolina during her interview with the officer who prepared the presentence report. Lack of candor and credibility reflect negatively on a defendant's potential for rehabilitation. <u>State v. Bunch</u>, 646 S.W.2d 158, 160 (Tenn. 1983); <u>State v. Nunley</u>, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999). In addition, Defendant's record shows two prior convictions for DUI and one conviction for leaving the scene. However, she was required to spend a total of only forty-eight hours in confinement for all three offenses. Apparently, measures less restrictive than confinement have been unsuccessful in altering Defendant's pattern of criminal behavior.

In addition, in this case a sentence involving at least some confinement would be proper to avoid depreciating the seriousness of the offense. <u>See</u> Tenn. Code Ann. § 40-35-103(1)(B) (1997). In order to deny any alternative sentence based upon the seriousness of the offense, the circumstances of the offense as committed must be especially horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree, and the nature of the offense must outweigh all other factors favoring a sentence other than confinement. <u>Bingham</u>, 910 S.W.2d at 454 (quoting <u>State v. Hartley</u>, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991)). We believe the record contains ample evidence that Defendant's actions were sufficiently reprehensible and offensive to deny full probation. Defendant left the accident scene with the knowledge that children were present in the vehicle she hit but without any regard for the fact that she may have injured them seriously. Fortunately, it appears that no one in the vehicle was physically damaged permanently. However, Defendant could not be sure of this because she did not pause to check, but proceeded down the road and caused yet another accident. Defendant's actions showed terrible and unforgivable judgment in driving while intoxicated and in deserting the victims. She further evinced a complete disregard for the gravity of her wrongful conduct when she repeated her mistake. Consequently, a sentence of full probation would certainly depreciate the seriousness of her offenses.

In sum, we cannot find that full probation is in the best interest of the defendant or the public. Whether the factors favoring a sentence involving split confinement generally outweigh the factors favoring continuous confinement in this case have not been fully analyzed. Accordingly, we remand this matter to the trial court to order either split confinement for the balance of the sentence or total incarceration. The trial court should make this determination in light of our conclusions above, all of the testimony previously heard at the sentencing hearing, and the sentencing considerations in Tennessee Code Annotated section 40-35-103. The trial court's decision should be based upon the current record. No further evidentiary hearings are necessary.

### III. Conclusion

We reaffirm our holding in <u>Ring</u> that a trial court must allow a victim to provide the court with victim impact testimony pursuant to the law provided for such evidence as discussed in this opinion. We further hold that victim impact testimony must be considered in determining the length and manner of service of a defendant's sentence where such testimony contains relevant and reliable evidence establishing enhancing or mitigating factors and/or any other sentencing considerations. After our <u>de</u> <u>novo</u> review without a presumption of correctness, we are unable to conclude that Defendant met her burden of establishing suitability for full probation. Accordingly, we reverse the trial court's judgment regarding manner of service of Defendant's sentence and remand this matter to the trial court to make appropriate findings and order either split confinement for the balance of the sentence or total incarceration.

_____
THOMAS T. WOODALL, JUDGE