IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 27, 2004 Session

## STATE OF TENNESSEE v. JOY LEIGH SANDIDGE

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S46,277     R. Jerry Beck, Judge**

_____

**No. E2003-01189-CCA-R3-CD**
**April 1, 2004**
_____

The defendant, Joy Leigh Sandidge, pled guilty to two counts of vehicular assault and one count each of DUI, fourth offense, leaving the scene of an accident involving injury, and failure to yield. The trial court imposed an effective sentence of two years, with the court to make a determination as to alternative sentencing after the defendant had served the mandatory 150 days in jail for her DUI, fourth offense, conviction. Subsequently, the trial court denied alternative sentencing and ordered the defendant to serve the balance of her sentence, and the defendant argues on appeal that the trial court erred in this determination. Following our review, we reverse the judgments of the trial court and remand for the defendant to be placed on probation for the remainder of her sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Reversed and Remanded**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ROBERT W. WEDEMEYER, J., joined.

Julie A. Rice, Contract Appellate Defender (on appeal); Stephen M. Wallace, District Public Defender; and Joseph F. Harrison, Assistant Public Defender (at trial), for the appellant, Joy Leigh Sandidge.

Paul G. Summers, Attorney General and Reporter; Braden H. Boucek, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and B. Todd Martin and Rebecca H. Davenport, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

At the submission hearing, the State announced the stipulated facts:

[O]n August the 17th, 2001, in Sullivan County, Tennessee, at approximately 11:57 p.m., Officer David P. Quillen, with the Kingsport Police Department, was traveling in the Kingsport area, near Stone Drive and Eastman Road, when he came upon an accident involving two vehicle[s]. He exited the car and approached one of the vehicles, which was a Honda Accord. He found the driver of that vehicle, Chris Collins, injured; had lost some blood and had what appeared to be a very bad cut in the neck area.

Mr. Collins was able to communicate with Mr. Quillen, so Mr. Quillen went to assess the other vehicle, where he found a Paul Crowder, in a Ford Explorer. Mr. Crowder first told . . . Officer Quillen that he was a passenger in the Ford Explorer and that someone else was driving. Mr. Crowder did appear to be under the influence of alcohol and has subsequently been convicted of DUI by allowing. The Ford Explorer was his vehicle.

Officer Quillen administered first aid to Mr. Collins. Within a short period of time some rescue personnel came to the scene and they took over. Officer Quillen located a witness, who was Mark Clevinger. Mr. Clevinger identified the driver of the Ford Explorer as a white female, dark hair, shorts, and a multi-colored shirt. He said that – Mr. Clevinger identified the male as having helped the female out of the vehicle. And in [a] subsequent interview, Officer Quillen found that Christopher Skeens had helped the defendant . . . exit the vehicle, the Ford Explorer and, but he was not sure at that point where she had gone to. He located her in the area of a Checker's Restaurant. She was standing outside. He called, or someone called to her. She walked inside the Checker's. Officer Quillen went inside to look for her. . . . [H]e asked her about the wreck; she said . . . she didn't know what he was talking about. She said that she wasn't driving any vehicle. He then informed her that there were witnesses who placed her inside the vehicle. She admitted to having been operating the Ford Explorer, though she would not say why she had left the scene.

She did have an odor of alcohol about her, she had cuts on her body, but she refused treatment. In performing field sobriety tests, she messed up on her ABCs, messed up on the nine step heel-to-toe, had upper body sway, horizontal gaze nystagmus was present. She was arrested and submitted to a blood alcohol test, and the results were a point two three (.23).

## ANALYSIS

The defendant's sole issue on appeal is whether the trial court erred in denying alternative sentencing. When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210. The party challenging the sentences imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169.

A defendant is eligible for probation where the sentence received by the defendant is eight years or less, subject to some statutory exclusions not applicable here. See Tenn. Code Ann. § 40-35-303(a). Although full probation must be automatically considered by the trial court as a sentencing alternative whenever the defendant is eligible, "the defendant is not automatically entitled to probation as a matter of law." Tenn. Code Ann. § 40-35-303(b), Sentencing Commission Cmts.; State v. Hartley, 818 S.W.2d 370, 373 (Tenn. Crim. App. 1991). On appeal, a defendant seeking full probation bears the burden of showing that the sentence imposed is improper and that probation will be in the best interest of the defendant and the public. State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997).

At the submission hearing, the defense attorney advised the court the agreement was that the defendant would be released on bond to enter a residential drug treatment program after she had served the mandatory 150 days. The court then reset consideration of the defendant's request for probation or alternative sentencing for six months, saying, "It's indicated that the plea agreement contemplated the Defendant seeking inpatient treatment and that the Court should delay the hearing until [the] time she can do that."

Subsequently, at the continuation of the sentencing hearing, the defendant, who was then free on bond, testified that she was twenty-three years old, a high school graduate, and employed as a

server at a restaurant.[1] A letter from the restaurant manager, which was made an exhibit, stated in part that the defendant had worked at the restaurant for approximately a month and a half, was "a great addition," and was "friendly and personable, on top of that she has been prompt and always does what is asked of her." The defendant had begun working at the restaurant shortly after completing the residential treatment program at Hope House in Oak Ridge. She said that she was an alcoholic and began drinking at age eleven. She said that most of her criminal activities had occurred during a period of eight months and were related to her drug and alcohol use. The defendant ascribed her multiple offenses to her drug and alcohol "disease escalating through the years," her "relationship with somebody who was also an alcoholic," and losing her "father in June of 2001." She said that while residing at Hope House she had learned about "the disease of alcoholism and drug addiction" and how to better live her life. She said that she had been sober and had not used illegal drugs for eleven months. The defendant completed her testimony, saying she had "the opportunity to do something with [her] life, and [had] already started doing [so]."

Reviewing two letters regarding the defendant's treatment at Hope House, the trial court stated the first said that she was "making progress regarding long term sobriety . . . [and] is meeting her treatment goals," with the second saying that, in residential treatment, "she made excellent progress, obtained and used a sponsor and took [a] leadership role with her peer, was consistently on time with her rent."

Mary Winbish, the defendant's aunt, testified that she had seen "a very positive change" in the defendant since she had undergone treatment at Hope House. She said that the defendant had always been "a good person" and had "become more involved with her family." She had encouraged the defendant to maintain a journal while undergoing treatment at Hope House, so that if the defendant "ever had any doubts about staying sober, she could look back in that journal and remember all her feelings when she was in jail and in the Hope House and in recovery." She said that the defendant had written in that journal each day, except when she had been hospitalized, and had sent the pages to Winbish so she could keep them.

Applying the holding of this court in State v. Blackhurst, 70 S.W.3d 88 (Tenn. Crim. App. 2001), the trial court denied alternative sentencing to the defendant, noting a number of factual similarities shared by the two cases:

> In Blackhurst, the victims, although I can't consider their opposition, they did set out a lot of problems they had, but the Court of Criminal Appeals, in Blackhurst, said it wouldn't have mattered . . . what the victims said, they didn't even have to reach the issue, because that was a big issue that went up on Blackhurst, they talked about the constitutional amendment on victim impact, but they said, we don't even have to get there to find out the Judge made [an] error

---

[1] We note, as well, that the defendant had been employed as a cashier at a Cracker Barrel restaurant from December 2001 until June 2002, when she began serving her jail sentence.

in denying – in granting Probation or Alternative Sentencing. So, and I find in here she's gone through a rehabilitation program and from all, everything before me indicates she has rehabilitated herself and is making excellent progress. Balanced against that are the factors similar to those in Blackhurst, two people hurt seriously. In Blackhurst it was DUI, 2nd, there was a 3rd one. In this case she's DUI, 4th. We don't have to get to victim impact. In this case the victims make no statement.

In Blackhurst, the defendant's vehicle struck a car stopped at a traffic light, severely injuring its three occupants. Id. at 91. The defendant left the scene in her vehicle and was apprehended later after striking a guard rail and mailbox. She appeared to be intoxicated, and her blood alcohol later registered .23%. She pled guilty to DUI, second offense, leaving the scene of an accident involving injury, and three counts of reckless aggravated assault, receiving an effective sentence of three years, eleven months and twenty-nine days, forty-five days of which were the mandatory confinement for second offense DUI. Id. The court ordered that, following completion of the mandatory minimum, the defendant serve the remainder of her sentence on "intensive probation, in house-arrest circumstances." Id. at 92. This court, in concluding that the trial court erred and that the defendant was not entitled to full probation following service of the mandatory minimum sentence, noted her failure to seek treatment for her alcohol problem, her lack of candor, and the minimal punishment she had received for prior DUI convictions:

> [W]e do not agree with the trial court's conclusion that because Defendant is employed, has accepted responsibility for the accident, and appears remorseful, she has sufficiently established suitability for full probation in light of the other factors in the record. For instance, the record reveals that Defendant has a history of problems with alcohol abuse as demonstrated by her prior convictions for driving under the influence of an intoxicant. Yet we find no indication of an attempt by Defendant to initiate treatment through Alcoholics Anonymous or any other organization designed to provide counseling or assistance with problems of this nature. Defendant also exhibited a lack of candor when she declined to report her prior DUI conviction in North Carolina during her interview with the officer who prepared the presentence report. Lack of candor and credibility reflect negatively on a defendant's potential for rehabilitation. In addition, Defendant's record shows two prior convictions for DUI and one conviction for leaving the scene. However, she was required to spend a total of only forty-eight hours in confinement for all three offenses. Apparently, measures less restrictive than confinement have been unsuccessful in altering Defendant's pattern of criminal behavior.

Id. at 98 (citations omitted).

In the present appeal, the defendant's alcohol and traffic related convictions occurred during a seven-month period, and all still were pending at the time of the incident which resulted in this appeal. She had been arrested on December 23, 2000, for DUI and possession of an intoxicant by a person under age 21. On April 3, 2001, she was charged with DUI, possession of an intoxicant by a person under age 21, and failing to stop at the scene of an accident. On July 21, 2001, she was charged with DUI. All of these charges were resolved by the defendant's pleas of guilty on August 28, 2001, eleven days after her arrest on August 17, 2001, for the charges which are the basis of the present appeal. She received varying punishments, all of which involved probation, and, as to the DUI convictions, was confined for two days for the December 2000 offense, two days for the April 2001 offense, and twenty days for the July 2001 offense, the latter sentence to be served consecutively to those imposed for the two earlier DUI cases.

In <u>Blackhurst</u>, 70 S.W.3d at 98, this court explained that it was necessary for the defendant to serve a portion of her sentence, in part, to avoid depreciating "the seriousness of her offenses":

> We believe the record contains ample evidence that Defendant's actions were sufficiently reprehensible and offensive to deny full probation. Defendant left the accident scene with the knowledge that children were present in the vehicle she hit but without any regard for the fact that she may have injured them seriously. Fortunately, it appears that no one in the vehicle was physically damaged permanently. However, Defendant could not be sure of this because she did not pause to check, but proceeded down the road and caused yet another accident. Defendant's actions showed terrible and unforgivable judgment in driving while intoxicated and in deserting the victims. She further evinced a complete disregard for the gravity of her wrongful conduct when she repeated her mistake. Consequently, a sentence of full probation would certainly depreciate the seriousness of her offenses.

<u>Id.</u>

This defendant, like Blackhurst, left the scene of an accident, although she did so on foot and was not involved in another accident. While her conduct in driving while intoxicated, walking away from the accident, and not seeking aid also were reprehensible, we distinguish her situation from that of Blackhurst. First, she amassed her DUI arrests over a period of seven months, and none had been resolved at the time of the present offenses. As a result, she neither had been convicted of those offenses nor placed on probation. Thus, unlike Blackhurst, she had not received relatively light punishment for prior DUI convictions. Additionally, unlike Blackhurst, she made an effort to rehabilitate herself, entering the Hope House where she underwent treatment for a period of two months. While details of each accident, as well as the respective subsequent behavior of the two defendants, militate against alternative sentencing, the facts that the present defendant's prior DUI offenses were compressed into a fairly short period and were still pending at the time of the present

offenses, as well as her efforts, which had not been required by the court, toward rehabilitation and long-term sobriety, entitle her to alternative sentencing. Accordingly, we distinguish the facts presented by Blackhurst from those of the present case and remand this matter to the trial court with instructions that the defendant be placed on probation under such terms as the court deems appropriate.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we reverse the judgments of the trial court and remand for the defendant to be placed on probation for the remainder of her sentence.

_____
ALAN E. GLENN, JUDGE