IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 8, 2008

**STATE OF TENNESSEE v. KOY OWENS**

**Direct Appeal from the Criminal Court for Shelby County**
**No. W06-00918     Lee V. Coffee, Judge**

---

**No. W2007-00653-CCA-R3-CD  - Filed April 14, 2008**

---

The defendant, Koy Owens, pled guilty to simple assault, a Class A misdemeanor, and to solicitation of aggravated assault, a Class E felony.  He received concurrent sentences of seven days for assault and one-and-a-half years for solicitation.  The trial court denied in part and granted in part the defendant's petition to have his sentence suspended.  The trial court ordered the defendant to serve forty-five days in confinement, day-for-day, on a non-consecutive basis and imposed two years probation.  On appeal, the defendant argues that the trial court erred by refusing to fully suspend his sentence.  Following our review of the parties' briefs, the record, and the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. McLin, J., delivered the opinion of the court, in which David G. Hayes and Alan E. Glenn, JJ., joined.

Mark A. Mesler, Memphis, Tennessee, for the appellant, Koy Owens.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Carrie Shelton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  BACKGROUND**

We note at the outset that the transcript of the plea hearing was not included in the record on appeal.  The following facts are taken from the "Agency Statement" included in the defendant's pre-sentence report:

> On September 27, 2006, at approximately 11:00 p.m., Teresa Sugars was working as a security guard in the Maureen Manor Apartments.  She observed a white vehicle parked in the handicapped parking space.  Ms. Sugars thought the vehicle belonged

to Koy Owens, who has been banned from the property. Ms. Sugars went to 3019 Nathan, Apt. 19 and knocked on the door. Owens' mother, Mae White[,] answered the door. Ms. White and Ms. Sugars had a brief confrontation about her knocking on the door at that time of night. Ms. Sugars left. Seconds later, Koy Owens emerged from the apartment and confronted Ms. Sugars. Owens grabbed Ms. Sugars by the throat and brutally beat her. After hitting, stomping and kicking her for several minutes, Ms. Sugars managed to escape and hide in a resident's apartment. Owens pursued her and was kicking on the door to the apartment where she was hiding. Owens went downstairs and started threatening to burn down the complex and kill everyone. Alfred Johnson was standing outside during the incident. Owens armed himself with a knife and charged toward Johnson. Mr. Johnson kicked Owens in the mid-section to put distance between them. Corey Lester observed Owens threatening Mr. Johnson with the knife. Mr. Lester armed himself with a kitchen knife and went to assist his friend. Mr. Lester came down from his apartment and yelled at Owens to draw him away from Mr. Johnson. Owens lunged at Mr. Johnson and cut him on the right forearm. Mr. Lester then stabbed Owens several times in the torso in self-defense. Owens was finally subdued by neighbors and his mother and taken to her apartment. Owens was transported to the Med in critical, [sic] condition but is now in satisfactory condition. The property manager, Barbara Ransom, confirmed that Owens was barred from the property for disruptive and threatening behavior and that he was advised not to come back on the property.

As a result of the negotiated plea agreement entered into by the state and the defendant, the defendant was ordered to serve seven days for his assault on the victim, Teresa Sugars. In addition, the defendant was sentenced to one-and-a-half years for the charge of solicitation of aggravated assault. The defendant was ordered to serve his sentences concurrently.

The defendant filed a petition to suspend his sentence. At the hearing on the defendant's petition to suspend sentence, Teresa Sugars testified that she saw a car matching the defendant's parked in front of the defendant's mother's apartment in violation of an order barring the defendant from coming on the property. Ms. Sugars stated that she knocked on the apartment door which was answered by the defendant's mother, Ms. Mae White. Ms. White denied that the defendant's car was parked in front of her apartment and told Ms. Sugars to find out whose car it was before knocking on her door. Ms. Sugars told Ms. White she was "crazy," before turning to leave. Ms. Sugars stated that she felt that Ms. White was trying to start something, so she walked away to avoid further conflict. As she walked away, the defendant came up behind her and asked if she was "talking crazy to [his] mama." Ms. Sugars told the defendant, "No, your mother is talking crazy to me."

Ms. Sugars testified that the defendant grabbed her by the neck and flung her to the ground. She stated that she could smell alcohol on the defendant's breath. The defendant proceeded to beat Ms. Sugars, hitting and kicking her repeatedly. The defendant broke one of Ms. Sugar's ribs and stomped with enough force to leave an imprint from the tread of his boot on her forehead. Photographs of the injuries to Ms. Sugars were entered into evidence. Ms. Sugars stated that two

other tenants came out and told the defendant to "get up off of her." The defendant kicked Ms. Sugars hard in the ribs before ceasing his attack. Ms. Sugars got up, ran into a nearby apartment, and called 911. She stated that approximately two minutes later, the defendant came and banged on the door of the apartment, demanding that she come out. She refused to leave the apartment. She stated that when she heard an ambulance and police car arrive, she came outside.

Ms. Sugars testified that she had to be taken to the hospital and treated for her injuries. She did not have insurance, and she accrued a medical bill of $1,181.30. She stated that prior to the incident, she would see the defendant and his mother at the barbershop where she worked and she indicated that they had all gotten along well. She also stated that as a result of the attack, she had lost her trust in other people.

The defendant testified that he believed that Ms. Sugars was threatening his mother and cussing at her and "he just snapped." He admitted that his attack on Ms. Sugars proceeded as Ms. Sugars had described it. He also admitted that he owed her an apology and he agreed that he should pay for her medical bills. The defendant further admitted that he had been drinking that night. However, the defendant stated that prior to the attack, there had been several confrontations between Ms. Sugars and his mother regarding the defendant's presence at his mother's apartment. He denied that he went back into his mother's apartment to get a knife. The defendant claimed that two neighbors came after him, armed with knives and wanting to fight. He stated that the two men were saying things about his mother and were not interested in defending Ms. Sugars. He also stated that he was stabbed eight or nine times. As a result of the stabbing, the defendant had a permanent hole in his stomach, a hole in his side and back, and his wrist was "messed up." The defendant testified that he spent five days in the Intensive Care Unit and a total of fifteen days in the hospital recovering from his injuries. The defendant later admitted that he had been friends with Ms. Sugars for at least three years prior to the attack.

The defendant testified that he was not employed, and had not been employed prior to the attack. The defendant admitted that he had been arrested three times in the past. He also admitted that he had paid a fine for patronization of prostitution. He acknowledged that he had been charged with three counts of simple assault, resisting official detention, and unlawful possession of a weapon - all misdemeanors, and all part of a single encounter with police. He was fined for the assaults and received sixty days for the unlawful weapons possession charge. The resisting arrest charge was dismissed. According to the defendant, he was twenty-one years old at the time he was charged with those offenses, and he had been targeted by police when his car broke down close to Beale Street. The defendant also admitted that he had been arrested for driving under the influence (DUI).

On cross-examination, the defendant admitted kicking Ms. Sugars in the head and stated, "I believe due to the situation lot of people did the same thing. [S]ome of them would have did worse . . . . I see it on the news everyday." The defendant stated that he did not believe he had an anger management problem, despite having been ordered to complete an anger management program for his prior assault convictions. The defendant later conceded that his actions were wrong. The

defendant also stated that he was unable to work because of ongoing problems with his hand and stomach.

At the conclusion of the sentencing hearing, the court noted that the defendant had already served the seven day sentence for his assault on Ms. Sugars. The trial court stated that the seven day sentence "was a miscarriage" and further stated, "It was wrong. It should not have happened because what [the defendant] did to you is certainly worth more than seven days in jail." However, the trial court acknowledged that both parties were bound to the terms of the plea negotiation entered into in General Sessions Court. The court indicated that it was troubled by the defendant's attitude and seeming lack of remorse. The court reviewed the defendant's pre-sentence report, criminal history, and the facts and circumstances of the case. The court concluded that placing the defendant on full probation would depreciate the seriousness of the offense. The defendant was sentenced to forty-five days incarceration, day-for-day, on a non-consecutive basis. In addition, the defendant was placed on two years probation, ordered to complete an anger management program, a behavior modification program, and moral recognition therapy. The defendant was also ordered to complete two hundred hours of community service, and to pay restitution to Ms. Sugars. The defendant was further instructed to have no contact with Ms. Sugars and informed that if he violated his probation, he would be ordered to serve the full sentence in confinement.

## II. ANALYSIS

On appeal, the defendant argues that the trial court erred by refusing to place him on full probation.

When a defendant challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (2006); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *Ashby*, 823 S.W.2d at 169. When conducting a de novo review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the appellant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210 (2006); *Id*. at 168. However, if the record shows that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely de novo without the presumption of correctness. *Ashby*, 823 S.W.2d at 169 (Tenn. 1991). Furthermore, we emphasize that facts relevant to sentencing must be established by a preponderance of the evidence and not beyond a reasonable doubt. *State v. Winfield*, 23 S.W.3d 279, 283 (Tenn. 2000) (citations omitted). The party challenging a sentence bears the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

A trial court shall automatically consider probation as a sentencing alternative for eligible defendants. Tenn. Code Ann. § 40-35-303(b). However, "the defense must establish that the defendant is otherwise suitable for probation consideration. In other words, even though probation must be automatically considered as a sentencing option for eligible defendants, the defendant is not automatically entitled to probation as a matter of law." *Id*., Sentencing Comm'n Cmnts. In addition to demonstrating his suitability for probation generally, the defendant also bears the burden of proving suitability for full probation. *See State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet the burden for establishing suitability for full probation, a defendant must demonstrate that full probation will serve the ends of justice and the best interests of both the public and the defendant. *State v. Blackhurst*, 70 S.W.3d 88, 97 (Tenn. 2001) (citations omitted). The following factors should be considered when deciding whether the defendant is a suitable candidate for full probation:

> (1) the nature and circumstances of the criminal conduct involved; (2) the defendant's potential or lack of potential for rehabilitation; (3) whether a sentence of full probation would unduly depreciate the seriousness of the offense; and (4) whether a sentence other than full probation would provide an effective deterrent to others likely to commit similar crimes.

Tenn. Code Ann. §§ 40-35-103(1)(B), -103(5), -210(b)(4); *see also Blackhurst*, 70 S.W.3d at 97.

Sentencing issues must be determined by the facts and circumstances of each case. *See State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987) (citing *State v. Moss*, 727 S.W.2d 229, 235 (Tenn. 1986)). In determining if incarceration is appropriate, a trial court may consider the need to protect society by restraining a defendant having a long history of criminal conduct, the need to avoid depreciating the seriousness of the offense, whether confinement is particularly appropriate to effectively deter others likely to commit similar offenses, and whether less restrictive measures have often or recently been unsuccessfully applied to the defendant. Tenn. Code Ann. § 40-35-103(1); *see also Ashby*, 823 S.W.2d at 169 (Tenn. 1991). As part of its determination, the trial court may also consider the defendant's potential or lack of potential for rehabilitation. Tenn. Code Ann. § 40-35-103(5). There is no mathematical equation to be utilized in determining sentencing alternatives. Not only should the sentence fit the offense, but it should fit the offender as well. Tenn. Code Ann. § 40-35-103(2); *State v. Batey*, 35 S.W.3d 585, 588-89 (Tenn. Crim. App. 2000).

At the outset, we note that our review of the defendant's sentence is hampered because of the defendant's failure to include a transcript of the guilty plea hearing in the record on appeal. In order to conduct proper appellate review, a transcript of the guilty plea hearing is necessary. *See State v. Keen*, 996 S.W.2d 842, 844 (Tenn. Crim. App. 1999). "It is the duty of the [defendant] to prepare a record that conveys a fair, accurate, and complete account of what transpired in the trial court with respect to the issues that form the basis of the appeal." *State v. Robinson*, 73 S.W.3d 136, 154 (Tenn. Crim. App. 2001) (citations omitted); *see also* Tenn. R. App. P. 24(b). "Since we deem the guilty plea proceeding essential to the determination of the issue presented, our proper course of

action is to sua sponte presume the trial court's decision is correct." *State v. Kynan Redmond*, No. W1999-00793-CCA-R3-CD, 2000 WL 204548, at *2 (Tenn. Crim. App., Feb. 15, 2000); *see also State v. Coolidge*, 915 S.W.2d 820, 826-27 (Tenn. Crim. App. 1995) (stating that the lack of any part of the record pertaining to sentencing requires the court to presume the sentence was correct).

In *State v. Gary M. Carter*, No. M2006-02341-CCA-R3-CD, 2008 WL 544629, at *4 (Tenn. Crim. App., at Nashville, Feb. 21, 2008), this court discussed a defendant's failure to provide his guilty plea transcript on appeal. Citing *State v. Brandon Shawn Jones*, No. E2003-02050-CCA-R3-CD, 2004 WL 1073810, at *1 (Tenn. Crim. App., at Knoxville, May 13, 2004), the court in *Carter* explained:

> In *State v. Brandon Shawn Jones*, this Court considered a defendant's claim that the trial court erroneously denied full probation. However, like the instant case, Mr. Jones neglected to include the transcript of the guilt plea. This Court determined that the "facts and circumstances of the offense were important to the trial court's sentencing determination . . . . Since we deem the guilty plea proceeding material to be the determination of the issue presented, our proper course of action ordinarily is to sua sponte presume the sentence is correct." We find Defendant's case to be in accordance with that opinion. The guilty plea proceeding is material to the issue of full probation and because Defendant did not include it in the record before us, we must presume that the sentence imposed by the trial court is correct.

*Carter,* 2008 WL 544629, at *4 (internal citations omitted). We likewise conclude that because the defendant did not include a transcript of the guilty plea hearing in the record, we must presume that the trial court's sentence is correct. The defendant is without relief as to this issue.

## CONCLUSION

Based on the foregoing reasons and authority, we affirm the judgment of the trial court.

_____
J.C. McLIN, JUDGE