IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 20, 2008

## STATE OF TENNESSEE v. CHARLES MICHAEL BEAN

**Appeal from the Criminal Court for Davidson County**
**No. 2006-A-405     Cheryl Blackburn, Judge**

---

**No. M2006-02417-CCA-R3-CD - Filed July 2, 2008**

---

The Appellant, Charles Michael Bean, appeals the sentencing decision of the Davidson County Criminal Court. A jury found Bean guilty of three counts of aggravated assault and two counts of reckless aggravated assault. The trial court merged the convictions for reckless aggravated assault with the three aggravated assault convictions, and a sentencing hearing was held. At the conclusion of the hearing, the trial court imposed the minimum sentence of three years for each of the Class C felonies and ordered that Bean serve nine months in incarceration followed by four years of probation. The sentences were ordered to run concurrently. On appeal, Bean argues that the trial court erred in denying him a sentence of total probation. After a thorough review of the record and the briefs of the parties, we affirm.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed**

DAVID G. HAYES, SR.J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Patrick G. Frogge, Nashville, Tennessee (on appeal and at trial); and Jack Butler, Nashville, Tennessee (at trial), for the Appellant, Charles Michael Bean.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Factual Background & Procedural History**

On January 1, 2006, a Davidson County grand jury returned an indictment charging the Appellant with eight counts of aggravated assault, which occurred on March 6, 2004. The State later dismissed three counts of the indictment, and the case was tried before a jury on March 27-28, 2006.

The proof at trial established that the Appellant was present at the Courtyard Café in Davidson County in the early morning of March 6, 2004, in the company of two women. The Appellant engaged in a brief verbal altercation with another patron, Clint Breeding, at the bar area inside the restaurant. After leaving the restaurant with the two women, the Appellant encountered a female restaurant patron, Misty Stankoff, in the restaurant parking lot. Stankoff was attempting to assist her intoxicated and physically ill boyfriend enter his vehicle so that she could drive him home. The Appellant approached Stankoff and introduced himself and his two female companions. The Appellant then grabbed Stankoff's buttocks, and she responded angrily. The Appellant showed Stankoff his Metro Fire Department badge and identified himself as a paramedic, offering to assist her intoxicated boyfriend. Stankoff replied that her friend would be fine and did not require medical attention. When another female restaurant patron approached and identified herself as a retired nurse, the Appellant said "[v]ery rude and vulgar things to her" and "went after her." When Stankoff intervened, the Appellant struck Stankoff in the chest. Breeding, whom the Appellant had encountered earlier inside the restaurant, then ran up to the Appellant, and the two men engaged in a physical fight. After a few minutes, Stankoff broke up the fight, and the group of people dispersed.

As the Appellant walked to his vehicle in the parking lot, two males, Christopher Jefferson and Delwyn Shelton, parked their vehicle and walked toward the entrance of the restaurant. Jefferson and Shelton, who had seen the Appellant "getting roughed up pretty good," crossed paths with him as they walked toward the entrance of the restaurant. Jefferson noticed that the Appellant "gave [him] . . . [a] look like he wanted to do something to [Jefferson], too," and Jefferson advised the Appellant that he had "better go ahead on unless [he wanted] to get whooped again." The Appellant then walked to his vehicle, retrieved a .40 caliber handgun from the glove compartment, pointed the handgun at people in the parking lot, and began "shooting in a circle[,]" firing approximately eight shots. Both Jefferson and Shelton were injured, but only Jefferson, who was shot in the leg, required medical attention. After firing the shots, the Appellant drove away in his vehicle, and he was subsequently apprehended by police officers. Officer Joseph C. High, with the Metro Police Department, testified that upon responding to a secondary location where the Appellant's vehicle had been detained by two other officers, he observed that the Appellant "had an extreme odor of alcohol on his person."

The jury found the Appellant guilty of the charged offenses of aggravated assault, a Class C felony, in counts one, two, and three of the indictment, and reckless aggravated assault, a Class D felony, in counts four and five. The trial court merged the reckless aggravated assault convictions with the aggravated assault convictions, and a sentencing hearing was held on July 5, 2006.

At the sentencing hearing, Terry McGrew, a former friend and business partner of the Appellant, testified that the Appellant has "a terrible road rage problem, [and] temper problem," and that the Appellant often would "whip his badge out in traffic" and "whip his gun out in traffic." McGrew testified that he and the Appellant had a verbal altercation, after which the Appellant "clipped" McGrew's leg with his Ford Expedition and drove over a mile with McGrew hanging onto the trailer attached to the vehicle. McGrew testified that he awoke at Vanderbilt Hospital and suffered serious physical injuries from this incident.

McGrew further testified that the Appellant had retrieved a gun to confront a personal debtor in 2004. The Appellant was arrested for this incident, but the case was apparently dismissed. Mary Wilhoite, an employee of the Metro Police Department, testified that the Appellant approached Sergeant Mike Brown about retrieving his weapon from the police property room after this incident. Brown refused to turn over the weapon to the Appellant, and he explained the policies and appropriate procedure for recovering seized weapons, after which the Appellant became irate. When Wilhoite stepped in and reiterated the procedures, the Appellant became angrier. The Appellant was asked to leave, whereupon he cursed Wilhoite and was to the point of throwing a "temper tantrum."

At the sentencing hearing, the Appellant testified that he was thirty-four years old, unmarried and had graduated from Volunteer State Community College with a degree in paramedic technology. The Appellant acknowledged that he had been suspended from the fire department on two occasions and that he had been required to attend anger management counseling. The Appellant essentially denied any responsibility for his two suspensions, stating that after he "bucked [the] system the first time because [he] wasn't guilty, ever since then every time [he] turned around something was happening." He ultimately resigned from the fire department and obtained employment with First Call Ambulance Service. The Appellant denied any culpability for his conduct at the restaurant parking lot on March 6, explaining "that his actions were not malicious" and that he was simply acting in self-defense.

The Appellant was sentenced to three years on each count of aggravated assault, to run concurrently, as a Standard, Range I offender. The sentences were suspended, and the Appellant was ordered to serve nine months of the respective sentences in incarceration, followed by four years of probation. The Appellant filed a motion for new trial, which was denied by the trial court. The Appellant timely filed a notice of appeal.

**Analysis**

When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that the determinations made by the court from which the appeal is taken are correct. T.C.A. § 40-35-401(d) (2003). The presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999). In conducting a *de novo* review of a sentence, we must consider: (1) any evidence received at the trial and/or sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancement factors; (6) any statements made by the defendant on his or her own behalf; and (7) the potential for rehabilitation or treatment. *See* T.C.A. § 40-35-210 (2003); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

The record clearly demonstrates that the trial court considered the sentencing principles and all relevant facts and circumstances in sentencing the Appellant. Accordingly, we presume the determinations made by the trial court to be correct.

In view of the Appellant's convictions for Class C felonies as a Standard, Range I offender, it is undisputed that he is statutorily entitled to the presumption of an alternative sentence. *See* T.C.A. § 40-35-102(6) (2003). Moreover, the Appellant is eligible for probation because the sentence imposed was three years.[1] *See id*. § 40-35-303(a) (2003). Although probation "shall be automatically considered by the court as a sentencing alternative for eligible defendants[,]" *id*. § 40-35-303(b), "the defendant is not automatically entitled to probation as a matter of law." *Id*., Sentencing Commission Comments; *State v. Fletcher*, 805 S.W.2d 785, 787 (Tenn. Crim. App. 1991). A defendant receiving probation may be required to serve a portion of the sentence in continuous confinement for up to one (1) year in the local jail or workhouse, with probation for a period of time up to and including the statutory maximum of time for the class of the conviction offense. T.C.A. § 40-35-306 (2003).

The Appellant argues that the trial court erred in denying him a sentence of total probation.[2] Determining whether a defendant is entitled to an alternative sentence necessarily requires a separate inquiry from that of determining whether the defendant is entitled to full probation. *State v. Bingham*, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995), overruled on other grounds by *State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000). These inquiries require a different burden of proof. *Bingham*, 910 S.W.2d at 455. "[A] defendant is required to establish his suitability for full probation as distinguished from his favorable candidacy for alternative sentencing in general." *State v. Mounger*, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999); *see also* T.C.A. § 40-35-303(b) (2003).

To meet the burden of establishing suitability for full probation, the Appellant must demonstrate that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *Bingham*, 910 S.W.2d at 456. In determining one's suitability for full probation, the court may consider the circumstances of the offense, the defendant's potential or lack of potential for rehabilitation, whether full probation will unduly depreciate the seriousness of the offense, and whether a sentence other than full probation would provide an effective deterrent to others likely to commit similar crimes. T.C.A. §§ 40-35-210(b)(4), -103(5), -103(1)(B) (2003); *see also Bingham*, 910 S.W.2d at 456. Denial of probation may be based solely upon the circumstances of the offense when they are of such a nature as to outweigh all other factors favoring probation. *Id.* (citing *Fletcher*, 805 S.W.2d at 788-89).

---

[1]The Appellant committed the offenses prior to June 7, 2005. Under the Sentencing Reform Act as it existed at the time, defendants were eligible for probation if the sentence imposed was eight years or less. T.C.A. § 40-35-303(a) (2003). For offenses committed on or after June 7, 2005, a defendant is eligible for probation if the sentence actually imposed is ten years or less. T.C.A. § 40-35-303(a) (Supp. 2005).

[2]The Appellant actually frames his issue as whether he was improperly denied "probation." We construe this to mean total probation as it is undisputed that the Appellant was granted a term of probation within his sentence of split confinement. As such, the Appellant was afforded the benefit of an alternative sentencing option.

In determining whether to grant or deny full probation, additional considerations include the defendant's criminal record; social history and present condition of the defendant, including his or her mental and physical conditions where appropriate; defendant's amenability to correction and general attitude, including behavior since arrest, home environment, current drug usage, emotional stability, past employment, general reputation, marital stability, family responsibility, and the best interests of both the defendant and the public.

*State v. Blackhurst*, 70 S.W.3d 88, 97 (Tenn. Crim. App. 2001) (citing *State v. Washington*, 866 S.W.2d 950, 951 (Tenn. 1993); *State v. Boyd*, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995)).

At the conclusion of the sentencing hearing, the trial court announced its decision regarding total probation as follows:

Now, let's look at regular probation, with regard to this. And, looking at the statute, I have to consider . . . whether confinement is necessary to protect . . . society by restraining a defendant who has a long history of criminal conduct. That does not apply to [the Appellant].

Whether or not . . . confinement is necessary to avoid depreciation of the seriousness of the offense or . . . or confinement is particularly suited to provide an effective deterrent to others likely to commit these similar offenses, and whether or not measures less restrictive than confinement have frequently, or recently, been applied unsuccessfully to the defendant.

That kind – may apply, but, not really; that is, he has been on diversion previously. It seemed not to do any good. But, that was back in 1992 for a "B" misdemeanor. I'm not sure that applies.

I think the thing that the Court is particularly concerned about, is the circumstances of the offense. Now, they are not especially violent, horrifying and shocking. But, they are . . . exaggerated and – and to an exaggerated degree. And, I do find that there is some need to – to avoid depreciating the seriousness of the offense and, also, there is some need to – to have some deterrence; that is, especially when somebody . . . gets into a fight, that they go to their car and get a gun and, then, starts shooting randomly at everybody in the parking lot.

I mean, that's just outrageous behavior that can't be tolerated. People need to know that.

So, there needs to be some deterrent value as well as the fact that – that . . . this is . . . one that all these factors do outweigh total probation. It is really up to the defendant to convince me why he needs total probation and he has not done so,

mainly because of his – his horrible temper problem that – that seems to go on for – for no good reason.

Upon review, we conclude that the trial court's sentencing decision was clearly justified. Particularly relevant to the trial court's decision to deny the Appellant a sentence of full probation was its finding that the Appellant had a "horrible temper problem[.]" This was an appropriate focus for the trial court in its consideration of the Appellant's social history and present condition, as well as his amenability to correction and general attitude. Moreover, we agree with the trial court's conclusion that the facts and circumstances of this case are such that total probation is inappropriate. Accordingly, the Appellant's sole issue on appeal is without merit.

**CONCLUSION**

Based upon the foregoing, the judgments of the Davidson County Criminal Court are affirmed.

_____
DAVID G. HAYES, SENIOR JUDGE