IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 21, 2016

**STATE OF TENNESSEE v. CHARLES L. HARTLEY**

**Appeal from the Criminal Court for Sullivan County**
**No. S63043     R. Jerry Beck, Judge**

───────────────────────────

**No. E2015-01493-CCA-R3-CD – Filed April 20, 2016**

───────────────────────────

Pursuant to a plea agreement, the Defendant, Charles L. Hartley, pleaded guilty to nine drug-related offenses for a total effective sentence of eight years with the trial court to determine the manner of service of the sentence.  After a hearing, the trial court ordered that the Defendant serve one year in confinement and the remaining seven years on probation.  On appeal, the Defendant contends the trial court erred when it denied him an alternative sentence. After a thorough review of the record and relevant authorities, we affirm the trial court's judgments.

**Tenn. R. App. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ., joined.

Jonathan E. Roberts, Bristol, Tennessee, for the appellant, Charles L. Hartley.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Barry Staubus, District Attorney General; and Josh D. Parsons, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A Sullivan County Grand Jury indicted the Defendant for one count of initiation of a process intended to result in the manufacture of methamphetamine, one count of conspiracy to manufacture .5 gram or more of a substance containing methamphetamine, one count of aggravated burglary, three counts of possession of drug paraphernalia, one count of possession of marijuana, and two counts of possession of methamphetamine.

Pursuant to a plea agreement, the Defendant pleaded guilty to all the indicted counts in exchange for a total effective sentence of eight years, with the trial court to determine the manner of service. At the guilty plea hearing, the parties stipulated to the following factual basis for the trial court's acceptance of the guilty plea:

On November the 22nd, 2013, Donald and Billie Littrell returned to their home [ ] in Bluff City, a location in Sullivan county, Tennessee. They had been gone on vacation for approximately a week, and when they returned home they observed vehicles parked in their driveway. Law enforcement was called, and there at the home three subjects were located on the front porch. [The Defendant], Melissa Timbs, and Wesley Odell. Recovered from inside the home, with the assistance of a K9 officer, were David Jones and Erica Moore. All five of these individuals are charged equally in this case under the accomplice theory of liability, and have all been charged in all counts, with a couple of – of exceptions.

A search was ultimately done of this particular residence, and during the course of the search of this residence in multiple rooms in the house were found coffee -- coffee filters; empty pseudoephedrine blister packs; drain cleaner; cut lithium batteries and ammonium nitrate; digital scales; used pipes; a baggie containing a white powder; a small baggie that was believed by the officers at the time to be marijuana; two cook bottles; 13 gasser bottles; other empty blister packs; and a receipt from a scrap metal location for -- for [the Defendant]; and mail in the name of [the Defendant] found in the basement area. On the back deck of the home there were found two used cook bottles.

A search – a consent search of [the Defendant's] vehicle also recovered wet coffee filters, used syringes, two spoons, and a receipt from Food City for Morton salt which the State would submit is necessary in some cases for the manufacture of methamphetamine.

While [the Defendant] initially told law enforcement that he had purchased pseudoephedrine in the past for people he assumed were going to cook methamphetamine, [the Defendant] on that day denied having any knowledge that a cook was going on, only that there was a methamphetamine cook going on at the scene when he got there. However, recovered from [the Defendant's] person was a substance that was sent to the TBI and tested positive to be methamphetamine.

. . . .

2

[A]ll the substances that were recovered from [the Defendant] and from the home that were believed to be methamphetamine, did indeed test positive for methamphetamine according to the TBI lab, and the substance believed to be marijuana also . . . tested positive . . . to be marijuana.

The trial court held a sentencing hearing on July 7, 2015, to determine the manner of service of the Defendant's eight-year sentence. The trial court reviewed the pre-sentence report, noting that the Defendant had a minor criminal record, had graduated from high school, and was currently employed. The trial court read the Defendant's statement to Sullivan County Sheriff, dated November 23, 2013, as follows:

Wes Odell called me earlier today for a ride but I wasn't in the area. Wes Odell then called me and my girlfriend, Melissa Timbs, to come over and hang out at his house.

When we arrived, Wes Odell and David Jones were already cooking meth. When I saw them cooking meth, I went to leave but the cops had already there [sic].

I use meth socially and used some earlier today. I have purchased pseudoephedrine . . . for people in the past that I assume was to be used to cook meth. I purchase about two pseudo boxes per month.

The trial court also read a portion of the victim's statement, stating, "The fact that my wife's grandson would break into our house and, with four others set up a meth lab has upset our entire family. Trust does not exist in it now."

The trial court noted that the victim's statement also detailed the cost to the victim for the methamphetamine cleanup. The damage was $40,000, that insurance covered, and the victim paid a $500 deductible. The victim and his wife were displaced from their home for two months due to the damage. The victim's wife's credit card was also stolen and used in Bristol, Tennessee. The credit card company credited the victim's account for the amount fraudulently charged.

The Defendant testified that his last "significant violation" was for public intoxication in 2004, approximately ten years ago. The Defendant stated that he worked five or six days a week at Bristol Caverns earning nine dollars an hour. He admitted that he had supplied methamphetamine "cooks" with pseudoephedrine but said that he no longer engaged in "that trade" anymore.

The Defendant testified that he was unaware that he was not to be on the victims' property. He admitted that he was on the victims' property but explained that he was invited. The Defendant said he was unaware that methamphetamine was being cooked at the property and denied any involvement. He stated that when he saw the methamphetamine, he said, "It's time to go. We need to leave." The police, however, had already arrived when he stepped out on the front porch of the victims' residence.

The Defendant confirmed that, if given a probation sentence, he would continue to work and "pass drug tests." The Defendant expressed sympathy for the victims stating, "That should have never taken place that night."

The trial court considered, as a mitigating factor, that the crime was not a crime involving violence. The trial court noted that although the Defendant told the preparer of the presentence report that he did not use illegal drugs, he told sheriff's deputies that he smoked methamphetamine socially.

The trial court made the following findings in ordering the Defendant to serve a sentence involving split confinement:

> I am concerned about the gravity of the offense to the victim. . . [T]hese victims suffered terribly financially. The insurance company – of course, they could afford it, I guess . . . .
>
> . . . .
>
> [I]n this case the victim and his wife are elderly folks. Believe he's 80 according to the report. He is – had his house destroyed by the – in effect, by the activities of the various defendants. He had to live in a hotel. He had cancer. He was displaced for two months, him and his wife.
>
> . . .
>
> And quite frankly I'm not basing this on his prior record . . . . I'm going to require him to serve some time, a split confinement sentence. I'm going to grant probation on condition he serve one year in the county jail.

It is from this judgment that the Defendant appeals.

## II. Analysis

4

The Defendant asserts that the trial court abused its discretion when it denied the Defendant's request for a probation sentence or an alternative sentence because it relied on the victim impact statement. The State responds that the trial court imposed the split confinement sentence due to the seriousness of the offense and properly considered the victim impact statement. We agree with the State.

The standard of review for questions related to probation or any other alternative sentence is an abuse of discretion with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). With regard to alternative sentencing, Tennessee Code Annotated section 40-35-102(5) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration.

A defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed on the defendant is ten years or less. T.C.A. § 40-35-303(a)(2014). A defendant is not, however, automatically entitled to probation as a matter of law. The burden is upon the defendant to show that he or she is a suitable candidate for probation. T.C.A. § 40-3-303(b); *State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

There is no bright line rule for determining when a defendant should be granted probation. *Bingham*, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis considering "the nature of the offense and the totality of the circumstances . . . including a defendant's background." *State v.* Ashby, 823 S.W.2d 166, 168 (Tenn. 1991) (quoting *State v. Moss*, 727 S.W.2d 229, 235 (Tenn. 1986)). In determining if incarceration is appropriate in a given case, a trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

5

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(1). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2014).

The trial court found that confinement was necessary to avoid depreciating the seriousness of the offense. The trial court considered the evidence, the circumstances of the offense, the Defendant's criminal history, education, health, substance abuse, and employment history. The trial court found the circumstances of these offenses to be "extraordinary." The trial court specifically noted the gravity of an offense where an eighty-year old victim, who while ill with cancer, was forced to relocate to a hotel for two months because his home was effectively destroyed due to the defendants' conduct.

Although the Defendant complains that he was denied an alternative sentence, we note that the split confinement sentence is in fact an "alternative sentence." In our view, the basis of the Defendant's appeal is that he was wrongfully denied full probation or a sentence to Community Corrections.

The trial court followed the statutory sentencing procedure, properly weighing the appropriate factors and sentencing principles in denying a sentence of full probation or a Community Corrections sentence. Accordingly, the Defendant has failed to establish an abuse of discretion or otherwise overcome the presumption of reasonableness afforded to the trial court's decision to order the Defendant to serve a sentence involving split confinement.

The Defendant also argues that the trial court erred when it considered the victim impact statement because it is "written hearsay testimony." This argument is unpersuasive. A victim impact statement is unique in that it is prepared by the Department of Correction pursuant to statute. T.C.A. § 40-38-204(a) (2014). Tennessee Code Annotated section 40-38-202 requires the trial judge to "solicit and consider a victim impact statement prior to sentencing a convicted offender who has caused physical, emotional or financial harm to a victim[.]" Further, this Court has held that trial courts should determine "whether the victim's impact testimony contain[s] any relevant and reliable evidence relating to enhancing or mitigating factors and/or any other sentencing consideration, and then decid[ed] what weight, if any, should be given to that

6

evidence in fashioning an appropriate sentence." *State v. Blackhurst*, 70 S.W.3d 88, 95 (Tenn. Crim. App. 2001). In our view, this is what the trial court did during the sentencing hearing with regard to the victim impact statement contained in the presentence report. The Defendant is not entitled to relief as to this issue.

## III. Conclusion

After a review of the record and applicable law, we conclude that the trial court properly sentenced the Defendant. In accordance with the foregoing reasoning and authorities, the judgments of the trial court are affirmed.

_____
ROBERT W. WEDEMEYER, JUDGE