IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 13, 2017 Session

## STATE OF TENNESSEE v. DENNIS MILLER

**Appeal from the Criminal Court for White County**
**No. CR6816   David A. Patterson, Judge**

_____

### No. M2016-02302-CCA-R3-CD

_____

The Defendant, Dennis Gregory Miller, entered a guilty plea to reckless aggravated assault, a Class D felony, with the punishment to be determined by the trial court. The Defendant requested judicial diversion and a sentence to be served on probation. After a hearing, the trial court denied diversion and imposed a two-year sentence, with sixty days to be served incarcerated and the remainder on probation. The Defendant appeals, asserting that the trial court abused its discretion. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Cindy Morgan, Sparta, Tennessee, for the appellant, Dennis Gregory Miller.

Herbert H. Slatery III, Attorney General and Reporter; Alexander C. Vey, Assistant Attorney General; Bryant C. Dunaway, District Attorney General; and Bruce MacLeod, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL AND PROCEDURAL HISTORY

The Defendant was indicted for an assault committed against his cousin, Tim Howard, on June 30, 2014. The plea hearing is not a part of the record, and we summarize the facts we have gleaned from the affidavit of complaint, the presentence report, and the victim impact statement.

The Defendant and victim had been embroiled in a dispute over some family property when the Defendant went to the property of a mutual relative,[1] where the victim was mowing the lawn. According to the Defendant, the victim refused to discuss the dispute and told him to get off the property.

The victim and the Defendant agreed that the physical confrontation began when the Defendant approached the victim and hit him in the head.[2] The punch had unforeseen consequences, in that the Defendant dislocated his own shoulder while throwing the punch. The Defendant fell to the ground, and the victim got on the Defendant's back to hold him down. The Defendant stated that the victim was punching him in the back, and the victim acknowledged he may have hit the Defendant. Both parties told law enforcement that the Defendant regularly carried a gun, that the gun was in his pocket, and that the victim told the Defendant "not to go for the gun." The two struggled over the pocket with the gun.

The Defendant eventually managed to draw the gun, and it discharged, striking the victim in the ankle. The Defendant and victim disagreed about the circumstances of the firing of the shot. The Defendant asserted that they were wrestling over the gun when it went off and that he did not intend to shoot the victim and was not at first aware that the victim was shot. The Defendant asserted that "at one point [the gun] was up around his neck area with both men's hands on it." The victim, on the other hand, stated that he did not have his hands on the gun when it discharged. He asserted that the Defendant had taken a step away and half a turn before he drew the weapon and that the Defendant kept "his left hand on his right wrist" because he was having trouble raising his injured arm to fire. The victim stated that after the shot was fired, he grabbed the Defendant's hands and pushed the gun over the Defendant's head. The victim and Defendant both stated that the Defendant's girlfriend approached after hearing the gunshot and that the Defendant surrendered the weapon to her, at which point both the victim and the Defendant sought medical treatment.

The victim told police that the Defendant slapped him before leaving, clarifying in his victim impact statement that the Defendant threatened to shoot him if he ever came on the Defendant's property and then "slapped [his] glasses off." The victim initially did not want to pursue charges.

---

[1] The record reflects that the victim and the Defendant are cousins, but the Defendant stated that he went to his grandmother's house to confront the victim, whereas the victim and his wife stated that the victim was mowing at the victim's mother's home.

[2] In the victim impact statement, the victim stated that the Defendant hit him multiple times.

- 2 -

The Defendant told police that he was "sorry this happened" and that he would "accept responsibility for [his] role in causing this altercation."

The Defendant was ultimately indicted on one count of aggravated assault causing serious bodily injury, one count of aggravated assault committed with a deadly weapon, and one count of domestic assault.[3] He pled guilty to the lesser included offense of reckless aggravated assault causing serious bodily injury, with the sentence to be set by the trial court. *See* T.C.A. § 39-13-102(a)(1)(B)(i).

The Defendant requested judicial diversion. Regarding diversion, the State stipulated that there was "nothing there" in the Defendant's criminal record, social history, or physical or mental condition. However, the State argued that the circumstances of the offense and deterrence should weigh against diversion.

The victim submitted a victim impact statement in which he stated he had had three surgeries on his foot and ankle, as well as a surgery to install a filter in his abdomen to treat blood clots resulting from the injury. He stated that he was still receiving treatment for the gunshot wound and had been for the past two and one-half years. He owed $20,000 in medical expenses after insurance. The victim had missed over a year of work, and his family was forced to reduce their standard of living. He also stated that his family no longer felt safe on their own property and that the Defendant had always "had a bad temper."

At the hearing, the Defendant established that he had no prior criminal history and had been employed by the same company as a heavy equipment operator since 1990. The Defendant made a statement of allocution in which he said he was sorry for his actions and for allowing his "anger [to] override [his] sensibilities." He acknowledged that he escalated the confrontation by hitting the victim and that he "should have been more responsible with [his] gun privileges." He denied stepping back or intentionally firing a shot. He stated that the incident caused a divide in his family and that he had suffered financially due to the criminal charges and an ongoing civil case. He stated that he would never repeat "this type of action."

The trial court made an oral ruling from the bench. The court noted that in determining whether to grant diversion and probation, it would consider the Defendant's criminal history, social history, mental and physical condition, attitude, behavior after arrest, stability, drug use, past employment, home environment, marital stability, family responsibility, general reputation, amenability to correction, the circumstances of the

---

[3] The original indictment is absent from the record, which contains two superseding indictments.

offense, the deterrent effect on other criminal activity, and the likelihood that diversion would serve the ends of justice and the best interest of both the public and the Defendant.

The trial court applied as enhancement factors the fact that the Defendant employed a firearm and that the personal injuries inflicted on the victim were particularly great, noting that the victim was still using crutches in court. *See* T.C.A. § 40-35-114(6), (9). The court applied as mitigating factors the Defendant's lack of criminal history and long and stable work history. *See id.* § 40-35-113(13). The court declined to apply the remaining mitigating factors asserted by the Defendant, concluding that the Defendant was not acting under provocation, that no substantial grounds existed to excuse or justify the conduct, and that there was no evidence the Defendant had an excellent reputation in the community. *See id.* § 40-35-113(2), (3). Regarding the Defendant's remorsefulness, the trial court found that "what he's sorry for is that he's in this shape." *See id.* § 40-35-113(13).

The trial court stated that, in imposing a sentence, it was considering the Defendant's misuse of a firearm and the fact that "he should not be eligible to … hav[e] a weapon." The court noted that the Defendant was responsible for the "[f]irst punch" and that the result was that the victim was shot in the foot. The trial court went through the circumstances of the offense, noting that the Defendant went to the victim's property, started a physical confrontation, and shot the victim in the foot. The trial court noted that the Defendant did not appear concerned with the victim's injuries. It concluded that serving sixty days in jail was an appropriate sentence. The trial court denied diversion and imposed a two-year sentence, with sixty days of incarceration and the remainder to be served on probation. The parties agreed on the amount of restitution at the sentencing hearing.

## ANALYSIS

The Defendant challenges the trial court's decision to deny him full probation and the trial court's decision to deny judicial diversion. We conclude that the trial court did not abuse its discretion in rendering either decision, and we accordingly affirm the judgment.

### I. Diversion

The Defendant asserts that the trial court failed to consider the proper factors in denying him diversion and that the trial court relied on an improper factor, the Defendant's legal possession of a handgun, in denying diversion. A trial court's sentencing decisions are generally reviewed for abuse of discretion, with a presumption of reasonableness granted to within-range sentences that reflect a proper application of

the purposes and principles of sentencing. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The court will uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10.

When a qualified defendant pleads guilty or nolo contendere to certain designated felonies, the trial court may defer proceedings and place the defendant on probation without entering a judgment of guilt. T.C.A. § 40-35-313(a)(1)(A) (2012). Judicial diversion is a "'legislative largess,'" and eligibility for diversion does not give rise to entitlement to diversion. *State v. King*, 432 S.W.3d 316, 323 (Tenn. 2014) (quoting *State v. Schindler*, 986 S.W.2d 209, 211 (Tenn. 1999)). "If the accused successfully completes the requisite probationary period, the trial court is required to discharge the accused and dismiss the proceedings," and the offender's record may be expunged. *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). The effect of expungement is to restore the defendant to the position occupied prior to arrest. *King*, 432 S.W.3d at 323. If the probationary period is not successfully completed, then judgment is entered and a sentence is imposed. *Id.*

In determining whether to grant or deny diversion, the trial court must consider: (a) the accused's amenability to correction; (b) the circumstances of the offense; (c) the accused's criminal record; (d) the accused's social history; (e) the accused's physical and mental health; (f) the deterrence value to the accused as well as others; and (g) whether judicial diversion will serve the interests of the public as well as the accused. *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); *Parker,* 932 S.W.2d at 958. The trial court must also weigh these factors against one another and provide an explanation of its decision regarding diversion on the record. *Electroplating, Inc.*, 990 S.W.2d at 229; *King*, 432 S.W.3d at 326.

When the trial court has followed the procedure mandated by *Parker* and *Electroplating*, the court's decision to grant or deny pretrial diversion is reviewed for abuse of discretion, accompanied by a presumption of reasonableness. *King*, 432 S.W.3d at 327. Generally, a trial court abuses its discretion when it applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the party complaining. *State v. Herron*, 461 S.W.3d 890, 904 (Tenn. 2015). This court will apply a presumption of reasonableness and uphold the trial court's ruling so long as there is any substantial evidence to support the trial court's decision. *State v. Dycus*, 456 S.W.3d 918, 930 (Tenn. 2015). "[E]ven though an abuse of discretion standard of review is appropriate for a trial court's judicial diversion decision, the trial court must consider and discuss each of the *Parker* and *Electroplating* factors on the record before the appellate court can determine whether 'any substantial evidence' exists to support the decision."

*King*, 432 S.W.3d at 327. The trial court is not, however, required to recite the factors; it is sufficient if the record reflects that each factor was considered. *Id.* However, if the record reflects that the trial court did not adequately consider and weigh on the record the factors in *Parker* and *Electroplating*, then this court may either remand or conduct a de novo review. *Dycus*, 456 S.W.3d at 930-31.

Here, the parties agreed that the Defendant was a qualified defendant within the meaning of the statute. The trial court listed the relevant factors that it was required to consider in making its decision about diversion, but it did not individually or explicitly apply each factor to the case before it. We nevertheless conclude that the record reflects that the trial court considered all of the relevant factors. In imposing the sentence, the trial court explicitly considered the Defendant's lack of a criminal history and his social history reflecting steady employment. While the trial court did not explicitly address the Defendant's physical or mental health, the State had earlier conceded that these were neutral in the diversion analysis. *See id.* at 931 (concluding that when there was nothing of note in the defendant's physical or mental health, the factor was neutral). The trial court clearly put great weight on the circumstances of the offense, on the deterrent value a conviction would hold for the Defendant, and on whether diversion would serve the interests of the public and the accused. The trial court found that the Defendant had essentially gone to someone else's property to start a fight, that he was responsible for beginning the physical altercation, that he brought a gun, and that he shot the unarmed victim, who suffered severe injuries. The trial court concluded that a felony conviction, which would render the Defendant unable to carry a firearm, would serve to protect the ends of justice and the interests of the public and the accused. It found that the Defendant would best be deterred from future offenses by losing his right to carry a firearm and by serving a short period of incarceration. These findings also reflect on the Defendant's amenability to correction. We disagree with the Defendant's characterization of this determination as a finding that he was not entitled to diversion because he legally possessed a gun; instead, the trial court was considering the deterrent value of a conviction and whether a conviction would be in the best interests of society and the Defendant. Moreover, contrary to the Defendant's assertion, the trial court was entitled to consider the victim impact statement as it reflected on the circumstances of the offense. *State v. Blackhurst*, 70 S.W.3d 88, 95 (Tenn. Crim. App. 2001) (noting that a victim impact statement could be considered reliable information relevant to the nature or circumstances of the offense or any other sentencing consideration). Accordingly, while the trial court's findings could have been more explicit, we conclude that the record reflects that each factor was considered and weighed in denying diversion, and we review for abuse of discretion. We conclude that the record contains substantial evidence to support the denial of diversion and that the trial court did not abuse its discretion.

- 6 -

## II. Probation

The Defendant next asserts that he is entitled to full probation. This court reviews a decision regarding alternative sentencing under an abuse of discretion standard, accompanied by a presumption of reasonableness when the sentence falls within the appropriate range and reflects that the decision was based on the purposes and principles of sentencing. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). "[A] trial court's decision to grant or deny probation will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014) (order) (per curiam). In reviewing for abuse of discretion, an appellate court may not substitute its judgment for that of the trial court. *Id.* at 475.

The party appealing the sentence has the burden of demonstrating its impropriety. T.C.A. § 40-35-401, Sentencing Comm'n Cmt. Likewise, the Defendant bears the burden of establishing that he is a suitable candidate for probation. *Id.* § 40-35-303(b). "This burden includes demonstrating that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)).

In determining whether incarceration is an appropriate sentence, the trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(1). "The sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed," and "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be

considered in determining the sentence alternative or length of a term to be imposed." *Id.* § 40-35-103(4), (5).

Defendants committing the most severe offenses and possessing criminal histories evincing a clear disregard for the laws and morals of society or evincing failure of past efforts at rehabilitation are to receive priority for incarceration. *Id.* § 40-35-102(5). A standard offender convicted of a Class C, D, or E felony who does not fall into the categories listed above should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. *Id.* § 40-35-102(6)(A). The court "shall consider, but is not bound by" this guideline. *Id.* § 40-35-102(6)(D).

While the trial court did not make an explicit finding regarding the factors in Tennessee Code Annotated section 40-35-103(1), it is clear from the record that the court found that confinement was necessary to avoid depreciating the seriousness of the offense. *Id.* § 40-35-103(1)(B). The Tennessee Supreme Court's order in *State v. Sihapanya* indicates that if the denial of alternative sentencing is based solely on a concern regarding depreciating the seriousness of the offense, this court must apply a "heightened standard of review." 516 S.W.3d at 476. While the State argues that the trial court also relied on the fact that "confinement is particularly suited to provide an effective deterrence," the statutory language limits the deterrence factor to a consideration of the value of deterrence "*to others* likely to commit similar offenses." T.C.A. § 40-35-103(1)(B) (emphasis added). The trial court never considered the deterrence value of confinement to others, and it only referred to deterrence as it related to the Defendant. Accordingly, we analyze the denial based on the sole factor regarding depreciation of the seriousness of the offense. "If the seriousness of the offense forms the basis for the denial of alternative sentencing, Tennessee courts have held that the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree, and the nature of the offense must outweigh all factors favoring a sentence other than confinement." *State v. Trotter*, 201 S.W.3d 651, 654 (Tenn. 2006) (quotations omitted).

Here, while the trial court's findings could have been more explicit, it is clear that the denial of full probation was based on the trial court's finding that the circumstances of the offense were of an exaggerated degree. The trial court noted in particular that the Defendant was unprovoked, that he brought the gun to the dispute, that he went to another person's property to start a fight, that he began the physical confrontation by hitting the victim, that he then shot the unarmed victim in the foot, that he had not expressed any concern for the victim during his allocution, and that the victim's injuries were particularly severe, necessitating four surgeries and resulting in ongoing physical and financial difficulties. The presentence report indicates that the victim observed the Defendant using two hands to steady the weapon when his injured arm could not raise it.

The court found that the Defendant needed "to have the sting of a jail sentence, [to] understand" the seriousness of the offense. The trial court noted that the period of incarceration was relatively short and that the two-year sentence was the minimum in the range. We conclude that the decision to order the Defendant to serve sixty days of the sentence in jail was not an abuse of discretion. *See State v. Micah Alexander Cates*, No. E2014-01322-CCA-R3-CD, 2015 WL 5679825, at *12 (Tenn. Crim. App. Sept. 28, 2015) (concluding that a sentence of confinement was warranted when the trial court found that the accident involved excessive speed and alcohol and that the Defendant gave no thought to the consequences of his actions), *perm. app. granted* (Tenn. Nov. 16, 2016); *State v. Tan Vo*, No. W2013-02118-CCA-R3-CD, 2014 WL 4415296, at *7 (Tenn. Crim. App. Sept. 9, 2014) ("Although the court failed to articulate the specific facts upon which it based this conclusion, the court's extensive discussion of the facts and circumstances of this case during the sentencing hearing reveal that the court's decision was properly based upon the facts of the case and was not arbitrary."); *but see State v. Tammy Marie Harbison*, No. M2015-01059-CCA-R3-CD, 2016 WL 613907, at *6 (Tenn. Crim. App. Feb. 12, 2016) (finding no substantial evidence to support the denial of probation based on depreciating the seriousness of the offense when a one-time theft of relatively small value was not of an excessive or exaggerated degree), *no perm. app. filed*.

The Defendant alleges that the trial court considered his possession of a firearm in denying probation and that this was improper because it was an element of the crime. *See Housewright*, 982 S.W.2d at 357-58. The Defendant is mistaken because the offense to which he pled guilty, reckless aggravated assault by means of serious bodily injury, does not require the use of a weapon as an element of the offense. *See* T.C.A. § 39-13-102(a)(1)(B)(i). Accordingly, we affirm the denial of full probation.

## CONCLUSION

Discerning no abuse of discretion, we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE

- 9 -